ROBINSON v. BLANKENSHIP .et al.

(*Jackson.* April Term, 1906).

1. **DEEDS.** Limitation over, after life estate, to heirs of grantor does not create remainder, but leaves reversion in grantor, disposable by him.

Where one gives an estate to another for life, with remainder limited to his heirs, while such limitation may be designated as a remainder, nevertheless, by the common law, it is not a remainder vesting in the heirs by purchase but an estate continuing in the grantor as the reversion in fee, which he may convey by subsequent deed.

2. **SAME.** Same. The term heirs is not a word of purchase in a limitation over to the heirs of the grantor. Case in judgment.

Where a husband conveyed to his wife an estate for life, with remainder to himself or his own heirs and then made to her a second deed conveying the same property in fee, reserving to himself a right of occupation during her life, and after his death she mortgaged the property, it was, upon bill filed to construe said deeds and foreclose the mortgage, held that the limitation over to the heirs of the grantor did not vest in them an estate by purchase but left in the grantor the reversion which was transferable by him.

Case cited and approved: Hoover's Lessee v. Gregory, 10 Yerg., 451.

FROM GIBSON.

Appeal from the Chancery Court of Gibson County. —JOHN S. COOPER, Chancellor.

ED SMITH, for Robinson.

W. M. McCALL, for Blankenship et al.

--- MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

The present case involves as its only question the constructions of the concluding clause in the habendum of a deed made by J. M. Blankenship to his wife, M. A. Blankenship, on the 5th of March, 1888, conveying to her certain real estate. The whole of the habendum is as follows: "To have and to hold unto the said M. A. Blankenship during her natural life (or so long as she may remain a widow in the event I should die before she does), together with all the appurtenances thereunto belonging, with remainder to me in event she should die before I do, and, should she survive me, then at her death or marriage to my heirs at law."

In 1895 the grantor in this deed made a second deed to his wife, by which he undertook to convey to her the property covered by that deed in fee simple, subject alone to the right upon the part of the grantor to occupy the same and receive the rents thereof during her natural life. After the execution and delivery of this second deed, the husband died leaving surviving him Mrs. M. A. Blankenship and two children, one a son and the other a daughter. The son died, leaving one heir, a boy. The daughter married. Subject to the death of the husband, Mrs. Blankenship made a mortgage on this prop-

erty for the purpose of securing a note executed by her to the intestate of the present complainant, the proceeds of this note being used for the purpose of satisfying a mortgage on the same property made by her deceased husband in his lifetime. The holder of the note, it being unpaid, filed the present bill to foreclose that mortgage and appropriate its proceeds to the satisfaction of this claim. The daughter of J. M. Blankenship, the grantor of the two deeds first mentioned, with her husband and the grandson of the grantor, as well as the mortgagor, Mrs. Blankenship, were made parties defendant to the cause.

The heirs of J. M. Blankenship insist that they take as purchasers under the terms of the reservation in the habendum clause of the deed of 1888, which has been hereinbefore set out.

It will be seen that an estate during her natural life, or as long as she remained a widow, should she survive her husband, was given by that deed to Mrs. Blankenship, this grant covering only a part of the grantor's fee-simple title. Upon the termination of the life estate, the grantor surviving, as a reversioner he would have been entitled at once to enter upon the possession of the property, or if he was dead at that time, then his heirs, occupying the place of the grantor, could have asserted the same right. The interest which the grantor had after the grant of the life estate to his wife, determinable upon her marrying again should she become his widow, was technically an estate in reversion, remaining in him and

Robinson v. Blankenship.

his heirs upon execution of his deed, and the nature of that estate could not be changed by calling it a remainder. So that if after the creation of this life estate determinable at an earlier period by the marriage of the wife of the grantor, should she survive as his widow, he had simply reserved a remainder to himself without more, the law fixing the character of the estate which remained in him as a reversion, would have let him into the possession upon the determination of the estate granted as a reversion, rather than as remainderman. So it was, the grant of 1885 being in the terms assumed, there is no doubt that the later deed would have carried to Mrs. Blankenship the title in fee to the property, subject alone to the life estate which the grantor reserved to himself. Now is the estate, which, as has been seen, was a reversion and not a remainder in the grantor, altered or affected by the terms of the deed, so far as his heirs are concerned?

As it is well settled that there are no heirs to a living person, if these defendants take under the clause of the deed which they insist created an estate in them, then they must take as contingent remaindermen. But they cannot take in that character, for upon the authority of many English cases, the earliest of these referred to being one found in Lord Coke's Report, the rule as stated in the text of volume 24, p. 398, of the American & English Encyclopedia of Law, is as follows: "An exception to contingent remainders is where the remainder is limited to the heirs of the grantor. This exception rests

on the principle that, while such a limitation is designated as a remainder, it is not a remainder at all, but is an estate which continues in the grantor as the reversion in fee."

This rule thus announced is stated by Mr. Washburn in the second volume on Real Property (top page 525) as the well-settled common-law rule. He says, treating of the subject of contingent remainders, that "there are what seems to be exceptions to the fourth clause of such remainders. Prominent among these are limitations coming within the rule in Shelley's Case. This rule will be more fully explained hereafter, but as showing how far it forms the exception above referred to, it is proper to state that it is accepted as one of the dogmas of common law, that if one makes a limitation to another for life, with a remainder over immediately or mediately to his heirs, or heirs of his body, the heirs do not take remainders at all, but the word "heirs" is regarded as defining or limiting the estate which the first taker has and his heirs take by descent and not by purchase. So, if a man by his will gives an estate to the devisee for life, with a remainder over to his own heirs, they do not, at common law, take as remaindermen by the will, but by descent as reversioners and heirs; that being regarded as the better title." To the same effect are 4 Kent, p. 506, and *Hoover's Lessee* v. *Gregory,* 10 Yerg., 451.

From the earliest period of the judicial history of this State, the rule in Shelley's Case was recognized and applied by this court, and it required the act of 1851-

52 to abolish it. The operation of that act, however, by its terms is confined to a case where a remainder is limited to the heirs, or to the heirs of the body of a person, to whom a life estate in the same premises is given. There has never been a statute passed in this State affecting the other common-law rule which in a case like the present, where the testator or grantor disposing of a life estate, in terms, seeks to create a remainder in his own heirs, lets these heirs in upon the termination of the life estate, as reversioners rather than as remaindermen. As reversioners their estate comes to them by descent and not by purchase, there being nothing in the context in the instrument to indicate that the grantor used the term "heirs" in the sense of children. This being so, the fee-simple title in the property in controversy was in the grantor, the ancestor of these heirs, and he had the full right to dispose of it as he did in his second deed. It follows, that the mortgage made by Mrs. Blankenship conveyed the whole title to the mortgagee, and these defendants setting up a claim under the deed of 1888 are without interest in the same.

The decree of foreclosure pronounced by the chancellor was without error, and the same is in all things confirmed.