# HINTON *v.* BOWEN.

## (*Jackson*, April Term, 1950.)

Opinion filed June 9, 1950.

Ross & Ross, of Savannah, for appellant, Mrs. J. G. Bowen.

464

W. H. SLOAN, of Savannah, for appellee.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

This case involves the construction of the will of J. G. Bowen, who died on October 19, 1946, leaving his widow and his son, J. G. Bowen, Jr., as surviving beneficiaries. The will reads as follows:

"Savannah Tennessee

"Feb. 15, 1946

"I, J. G. Bowen, this day do will and bequeath Mrs. J. G. Bowen (Eunice Durbin Bowen) my half interest in the barn of Bowen Brothers and my half interest in Carrage of Falls and Bowen all of which are unincum-

bered also my creek land known as Jane Freeman place which is also uncumbered, also my home place which no one has owned but us since house was built. My half interest in Wardlow land known as Smith land. . 100 acres in Tenn River bottom. Also my half interest in Bowen Brothers notes which consist of $25,000 to $30,000 or perhaps more. All personal and bankable property that I own.

"All of the above is to be in Mrs J. G. Bowen's (Eunice) name or she is to get income if she does not marry again. Then if she marries all of this property goes back Grady II. Then Grady II when he finishes high school and goes to college gets an automobile, but if he does not make his grades his mother takes car away from him. This will supersedes all other wills.

This will was wrote in sound mind.

"J. G. Bowen.

"Codicil

"My personal notes goes to my wife Eunice Bowen which consists of $6000 or more. W. H. Sloan is suggested as attorney, otherwise let my wife appoint who she wants to, but none of family unless she wants to advise with W. B. Falls. This will overcomes the one that Mr. Sloan holds now. I am doing this for love and affection of my wife and boy.

"This is my last will and statement

"Eunice is to be administrator without bond.

"J. G. Bowen

"Witness John S. Kerr, J. P.

 " C. M. Lowder " " "

Upon the death of the testator C. L. Hinton filed his original bill asking for a sale for partition of certain property in which he and deceased owned a one-half

interest. His right to have a decree of sale was not questioned. But Mrs. Bowen filed a cross-bill in which J. G., or "Grady", Bowen was made a defendant and prayed for a construction of the will of her husband to determine the nature and extent of her interest in the proceeds of the sale as well as other property devised and bequeathed. The Chancellor appointed a guardian *ad litem* who filed an answer on behalf of the minor son.

It is the contention of Mrs. Bowen that she was given an estate in fee simple to all the property, that is that she became the owner of the fee in all of the real estate owned by her husband at his death as well as the owner of "all other property of which he died the owner". The Chancellor held as follows:

"The court, upon the construction of said will, is of opinion, and adjudges and decrees that it was the intention of the testator to devise to, and vest in cross complainant a life estate in the real estate of which he died seized and possessed, and devised by his will to his wife, the cross complainant, and that under and by virtue of the terms and provisions of the will, she took a life estate in said real estate for and during the term of her natural life, subject to be terminated in the event of her remarriage, and that in the event of her remarriage before her death, all rights to said real estate and to the rents and income thereof would immediately cease, and the title to said real estate and of the benefits thereof would immediately upon the remarriage, pass to and vest in the defendant, J. G. Bowen, Jr.; and upon the remarriage of cross complainant she will not be entitled to any further interest in said real estate and will not thereafter be entitled to receive the rents and income thereof."

The decree concludes with the proviso that upon the happening of the contingency referred to herein, to wit the remarriage of the widow then and in that event the son, J. G. Bowen, Jr., would become the sole owner in fee of the property of the deceased. The complainant, Mrs. Bowen, excepted to the decree and was granted an appeal to this Court.

There are six assignments of error but the real and only question is set forth in Assignment No. 2, as follows:

"The Chancellor erred in decreeing that it was the *'intention'* of the testator to vest in appellant a life estate in his real estate, but that life estate subject to be terminated in the event of her remarriage, and that in that event, all rights to the real estate, and to the rents and income thereof would immediately cease, and that thereupon the real estate, and the benefits thereof, would, upon the remarriage, immediately vest in J. G. Bowen, Jr., and further, that upon the remarriage of appellant, she would not be entitled to any further interest in the real estate, and not entitled to receive the rents and income thereof."

The will is very inartificially drafted, but when considered as a whole it is clear that the widow (Eunice Durbin Bowen) was given an absolute estate on condition subsequent i. e. that she remain a widow. There is nothing said in the will about devising a life estate to the widow. After making specific gifts of both real and personal property in the first paragraph of the will there is subjoined in the second paragraph a condition subsequent as follows: "All of the above is to be in Mrs. J. G. Bowen's (Eunice) name or she is to get income if she does not marry again. Then if she marries all of the property goes back to Grady III." We are influenced

in holding that the interest taken by Mrs. Bowen is a base or determinable fee by the fact that the fee passed to her and would of necessity remain in her so long as she remained a widow. Otherwise there would be no vesting of it in anybody. The title would be *in nubibus,* and repugnant to the rule of law favoring the vesting of estates. The language which specifies the condition subsequent, that is, that the property is to be in her "name or she is to get income if she does not marry again" in no way implies a life estate in the widow. The income from land is the land itself. It has been said by a great law writer on the law of real property, "what is land but the profits thereof?" Moreover it must be borne in mind that this is not a case where property is devised or bequeathed to a woman "during life or widowhood", but on the contrary the widow is given the fee subject to be defeated by a condition subsequent. In *Overton* v. *Lea,* 108 Tenn. 505, 547, 68 S. W. 250, 260, the will of testator provided: "Unto my mother, Rebecca Salmons Lea, to and for her own use and benefit absolutely, provided, that she does not marry again." There was an express gift over to Overton Lea, Jr., in case of her remarriage. In construing the will it was held that Mrs. Lea was devised a determinable fee, citing numerous authorities. The case is analogous to the case at bar and is most persuasive upon the Court in our conclusion as to the intention of the testator. In discussing the nature of a determinable fee the Court used the following language:

"Such 'determinable fee,' while it continues, has all the 'incidents' of a fee simple, except insofar as these 'incidents' are expressly further restricted . . . by the simple limitation over. It is subject to [courtesy]

and dower, may aliened by deed or devise, and descends to the heirs, subject to being instantly divested out of the first taker, or those claiming under him, upon the happening of the contingency upon which the limitation . . . is to take effect. 1 Washb. Real Prop. (5th Ed.) 95, 178, 228, 272; 1 Jarm. Wills (6th Ed.) 836-848; 2 Washb. Real Prop. (6th Ed.) 674; *Ryan* v. *Monaghan,* 99 Tenn. 338, 42 S. W. 144.''

 The testator in the case at bar gave to the widow all his property, both real and personal, subject to be defeated only upon the happening of the condition subsequent. She thus became vested with the personalty mentioned and has the undoubted right to use it and dispose of it by deed or by will as if it were realty. Should it be consumed by use, or if otherwise lawfully disposed of by the widow, her remarriage could not operate to defeat her in its lawful use and disposition. This is true because such property has no fixed situs as land. Moreover it would be repugnant to the nature of the gift itself for us to hold that the beneficiary must in some manner preserve the corpus throughout the remainder of her life upon the theory that she might decide to remarry and thus bring about the condition subsequent. We think where one is given a determinable fee in money, notes and other chattels it implies an unlimited power of disposition, provided no contrary intention is expressed in the will. The case of *Overton* v. *Lea, supra,* sustains our view that the devise in the instant case is not void since it is not a restraint upon marriage.

We are constrained to hold, upon the authorities cited and for the reasons given herein, that the learned Chancellor was in error in his construction of the will in question. The assignment of error is sustained and the cause

remanded for such other orders and decrees as the Chancellor may consider appropriate and necessary, including the fixing of reasonable compensation for the guardian *ad litem*.

All concur.